**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ANDREW REID,                                                                                              PLAINTIFF
ADC #134373

v.                                              5:13CV00249-JLH-JTK

WENDY KELLEY, et al.                                                                             DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.     Introduction

Plaintiff Andrew Reid is a state inmate incarcerated at the Varner Super Max Unit of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. Specifically, Plaintiff complains that Defendants denied his legitimate requests for treatment for gender identity disorder (GID), following two separate incidents involving self-mutilation of his testicles. Plaintiff asks for monetary and injunctive relief from Defendants Wendy Kelley, Ray Hobbs, and Dr. Margaret Peggy Rector.[1]

This matter is before the Court on Defendants' Motion for Summary Judgment, Statement of Facts, and Brief in Support (Doc. Nos. 82-84), to which Plaintiff responded (Doc. No. 86).

In his Amended Complaint, Plaintiff alleges he sought treatment for Gender Identity Disorder (GID) for two years, and was treated at the ADC by Doctors Rector and Richard, the latter

---

[1] Dr. Richard was dismissed on January 29, 2014 (Doc. No. 41).

2

whom is a psychiatrist. (Doc. No. 3, p. 3.) Plaintiff tried to cut off one of his testicles on February 4, 2013, and later met with Defendants Richard and Kelley and other members of the medical board of his Unit. (Id.) The board denied his request for a GID diagnosis, and Plaintiff continued to be treated by Rector and Richard, who told him he would be fine. (Id., p. 4.) Plaintiff cut off his other testicle on June 9, 2013, was surgically treated, and returned to the Unit where he was placed on suicide watch for seventy-two hours. (Id.) Per his request, he saw Dr. Richard on July 22, 2013. (Id.)

Plaintiff claims he suffers from Hypergonadism, which causes a decrease in testosterone, resulting in symptoms similar to those of menopause in women. (Id., pp. 4-5.) Defendants were deliberately indifferent in their failure to adequately treat him, and Plaintiff asks the Court to Order them to treat him for GID and award damages. (Id., pp. 6-7.)

## II.     Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are

viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.     Official Capacity Claims

The Court initially agrees with Defendants that Plaintiff's monetary claims against them in their official capacities are barred by sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

### B.     Individual Capacity Claims

#### 1.     Defendants' Motion

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity, stating that he provides no evidence that they acted with deliberate indifference to his serious medical needs. Qualified immunity protects officials who act in an objectively reasonable manner, and may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable

to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

According to Plaintiff's medical records, he was treated at Ozark Mental Health in Marshall, Arkansas from 2008-2010 for assessment purposes, and has taken various mental health medications such as Xanax, Ritilan, Lithium, and Depakote. (Doc. No. 84-2, p. 1) An ADC Mental Health Services Treatment Plan and Review conducted at the Ouachita River Unit on September 30, 2014, listed his "problems" as mood disturbance, social loss, antisocial behavior, coping skills deficits, deceptive/manipulative, and drug abuse/dependence, and diagnosed him with "polysubstance dependence" and "antisocial personality disorder; borderline personality disorder." (Id.) He was seen for a mental health follow-up on October 6, 2014, at which time he reported that he was eating and sleeping, no longer took his medication, and voiced no new mental health issues or concerns. (Id., p. 7) He was discharged and returned to the Varner Unit on October 14, 2014, with a referral to the Unit mental health provider for psychotropic medication and follow-up, and individual therapy and counseling. (Id., p. 8)

Defendant Dr. Rector visited with Plaintiff on November 5, 2014, and Plaintiff reported no

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson v. Correctional Medical Services, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

mental health concerns or suicidal ideation, and acknowledged that for reasons of safety, he should continue to be housed under camera in an isolation cell.  (Id., p.10) According to a Segregation Review Form dated December 2, 2014, Plaintiff's request to see a psychiatrist or psychologist was forwarded to Defendant Rector, after Plaintiff reported thoughts of harm to others.  (Id., p. 13.)

Dr. Albert Kittrell, an ADC psychiatrist, reviewed Plaintiff's records on November 10, 2014, and personally evaluated Plaintiff on December 5, 2014.  (Doc. Nos. 84-3, 84-4) According to his report, Plaintiff first cut his scrotum in February, 2013.  (Doc. No. 84-3) Following the incident, Plaintiff met with the ADC Gender Identity Committee, which concluded that "this inmate did not meet the clinical criteria for a diagnosis of GID, and that there was no indication that any special housing or interventions were warranted at this time." (Id.) Psychiatric assessments were conducted on two separate occasions in February, 2013, and a review of Plaintiff's records dating back to September 29, 2005 showed no prior diagnoses of gender identity/dysphoric disorder. (Id.)  Based on Kittrell's review of Plaintiff's history and his conversation with Plaintiff, Kittrell concluded that it was unclear that Plaintiff's preference to have female characteristics "warrants specific medical and/or psychiatric treatment beyond what is being administered presently." (Doc. No. 84-4, p.2)

Based on these records, Defendants state Plaintiff cannot show they have acted with deliberate indifference to his serious medical needs, especially since he has never been diagnosed with GID.  Defendants Hobbs and Kelley note that they are not medical professionals, and not directly responsible for Plaintiff's medical care, and that his allegations against them are based on their supervisory positions.  Defendant Rector notes that Plaintiff has been consistently treated by mental health professionals, and that his complaint appears to be with the type of medical treatment he receives, which does not support a constitutional claim.

### 2. Plaintiff's Response

Plaintiff responds that as a Catholic, Defendant Rector is biased against him and his transsexualism. He also states that other non-party ADC mental health professionals would not discuss gender problems with him and would not set realistic goals for his progress. Finally, he notes that Defendant Kelley was a member of the GID committee, and therefore, adequately informed of his medical needs and lack of appropriate treatment.

### 3. Analysis

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, supra, 132 F.3d at 1240.

Having reviewed the parties' submissions and exhibits, the Court finds as a matter of law that Defendants acted reasonably under the circumstances and no evidence supports a constitutional violation. Plaintiff has never been diagnosed with GID; therefore, Defendants' failure to treat him for this condition was not improper or unconstitutional. In addition, Plaintiff's medical records clearly show a pattern of treatment for Plaintiff's numerous mental health issues, and most of the entries from the latter part of 2014 indicate that Plaintiff reported no mental health concerns or issues. (Doc. No. 84-2, pp. 5-14). Plaintiff's complaint with Defendant Hobbs appears to be based on his responses to grievances, but that involvement does not support a constitutional claim for relief. A "[prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates....it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (quoting Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982)).

In addition, Plaintiff's complaint with Defendant Kelley is based on her involvement with the GID committee which concluded that Plaintiff was not entitled to treatment for that condition. That limited involvement, given the medical records showing treatment and Kelley's lack of a medical background, does not support a constitutional claim for deliberate indifference. And, Plaintiff also fails to show any deliberate indifference by Defendant Rector, who treated him for numerous mental health issues.

In conclusion, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right and that Defendants are entitled to qualified immunity.

**III.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 82) be GRANTED and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 23rd day of January, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE